Van Voobhis, J.
 

 This appeal is based on the legal principle that a bank draft bought and paid for is an executed sale of credit, and is not subject to rescission or countermand
 
 (Kerr S. S. Co.
 
 v.
 
 Chartered Bank of India,
 
 292 N. Y. 253;
 
 Schweitzer
 
 v.
 
 Fargo,
 
 255 N. Y. 60;
 
 Gravenhorst
 
 v.
 
 Zimmerman,
 
 236 N. Y. 22;
 
 Bobrick
 
 v.
 
 Second Nat. Bank,
 
 175 App. Div. 550, affd. 224 N. Y. 637). This principle has become axiomatic, nor does it appear that Special Term or the Appellate Division questioned it. We think that they erred, however, in failing to give effect to a Canadian judgment which established title to this draft in plaintiff. If that is true, it resolves the. issue in favor of plaintiff-appellant. .
 

 
 *410
 
 The root of the controversy is a contract with plaintiff’s predecessor in interest for the sale of firearms. Five hundred revolvers were to be delivered by this concern in the Province of Quebec to one Betting, who was then a resident of Kingston, New York. The purchase price was $7,750. A deposit of $1,000 was to be made by Betting under this executory agreement. He purchased a New York draft in this amount of defendant, Kingston Trust Company, drawn on the Federal Beserve Bank of New York, which Betting forwarded to his escrow agent in Canada to constitute the deposit under the agreement which has been mentioned for the purchase of these revolvers, to be applied on the purchase price when the revolvers cleared the United States Customs at Ogdensburg, N. Y. A dispute arose over the performance of this contract between Betting and plaintiff, or plaintiff’s predecessor in interest. Plaintiff asserted that, although this merchandise had not cleared the United States Customs, it was prevented from doing so by Betting himself, who had refused to complete the necessary forms to get these firearms through the customs. Plaintiff sued Betting in the Province of Quebec, joining Betting’s Canadian escrow agent (the Boyal Bank of Canada) which had possession of this draft, and the drawee of the draft (the Federal Beserve Bank of New York). Jurisdiction in rem was obtained over Betting, by what is known as a conservatory attachment, under procedure similar to that in force in New York State. The draft was attached in the hands of Betting’s Canadian escrow agent, to which it had been remitted by Betting to be applied on the contract subject to the condition mentioned, obtaining jurisdiction over Betting insofar as Betting’s property was attached by substituted service according to Quebec law, and the court held that the executory contract of sale of these revolvers had been broken by Betting through his refusal to co-operate by signing the necessary forms in clearing the United States Customs. This decision was evidently made in the light of the familiar principle that there is an implied obligation of good faith binding parties to contracts, that they will not deliberately frustrate their performance
 
 (O’Neil Supply Co.
 
 v.
 
 Petroleum Heat & Power Co.,
 
 280 N. Y. 50, 54-55;
 
 Wigand
 
 v.
 
 Bachmann-Bechtel Brewing Co.,
 
 222 N. Y. 272, 277). It was held, in effect, that Betting was no longer entitled to take
 
 *411
 
 advantage of the condition under which he had transmitted this draft to his Canadian escrowee, that the draft constituted the deposit which Betting had made on the contract, freed from the condition the performance of which he had frustrated, and was forfeited to plaintiff for the reason that Betting had broken the contract. In these respects, the law of Quebec appears to parallel our own. It is unimportant, however, whether the courts of Quebec decided the issue as it would have been decided in New York, so long as it does not do violence to our public policy. The law is well settled that, under principles of comity, our courts give effect to the judgment of the Canadian court
 
 (Williams
 
 v.
 
 Armroyd,
 
 7 Cranch [11 U. S.] 423;
 
 Hilton
 
 v.
 
 Guyot,
 
 159 U. S. 113). In the
 
 Williams
 
 case, the opinion said (p. 432), per Chief Justice Marshall :
 
 ‘ ‘
 
 It appears to be settled in this country, that the sentence of a competent Court, proceeding
 
 in rem,
 
 is conclusive with respect to the thing itself, and operates as an absolute change of the property. By such sentence, the right of the former owner is lost, and a complete title given to the person who claims under the decree. No Court of co-ordinate jurisdiction can examine the sentence. The question, therefore, respecting its conformity to general or municipal law, can never arise, for no co-ordinate tribunal is capable of making the inquiry.”
 

 The only defect which respondent claims to exist in this reasoning is that the defendant in the instant action, Kingston Trust Company, was not a party to the Canadian lawsuit. That circumstance is irrelevant. In this firearms transaction, the New York draft bought by Betting from the Kingston Trust Company was, for the purposes of the transaction, equivalent to money. Kingston Trust Company no more needed to be a party to the Canadian action than the United States Government would need to have been, if its currency had been the subject of the deposit. That follows from the legal principle mentioned at the beginning, that the purchase of a bank draft results in an executed sale of credit which is not subject to rescission or countermand. Kingston Trust Company was not involved in the contract for the purchase and sale of firearms between Betting and plaintiff’s predecessor. Betting had simply bought the draft to be used as the equivalent of money in whatever manner he elected to pursue. The bank had no duty or
 
 *412
 
 function to take part in Betting’s controversy. If Betting had remitted cash to his escrow agent in Canada, with instructions to apply it on his executory contract under the same condition, and the Canadian court had held the deposit to have been appropriated to the contract, plaintiff would have been entitled to retain the money. The United States could not refuse to honor its money on account of mischance of Betting for the reason that it was not a party to the action in Quebec; neither could the Kingston Trust Company, whose credit had been unconditionally sold to Betting and was used for the same purpose.
 

 In
 
 Barr
 
 v.
 
 Gratz
 
 (4 Wheat. [17 U. S.] 213, 220) the United States Supreme Court said: “It is true that, in general, judgments and decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case like the present, where the decree is not introduced as
 
 per se
 
 binding upon any rights of the other party, but as an introductory fact to a link in the chain of the plaintiff’s title, and constituting a part of the muniments of his estate.”
 
 (Railroad Equipment Co.
 
 v.
 
 Blair,
 
 145 N. Y. 607, 610;
 
 Israel
 
 v.
 
 Wood Dolson Co.,
 
 1 N Y 2d 116.)
 

 There can be no doubt that the judgment of the Quebec court binds Betting with respect to this draft, whose property it had been. The Canadian court held, in view of his transactions, that the draft belonged not to Betting but to plaintiff. Kingston Trust Company had no interest in that transaction. No question was involved that the draft had been duly issued by defendant bank and paid for by Betting. If the bank reimbursed Betting, as it did, for the purchase price of this instrument, without surrender of the draft, it did so at its own risk. It was under no obligation to reimburse Betting without receiving the return of the draft, and if the indemnity agreement which it took from Betting proved to be valueless, that is the misfortune of the bank and not of plaintiff. If it chose to satisfy an erstwhile customer, that does not furnish a reason why it should not be compelled to honor its drafts or on account of which the transactions between Betting and plaintiff’s predecessor should be relitigated in our courts after they have been finally adjudicated in the courts of Canada.
 

 
 *413
 
 The judgment appealed from should be reversed, and judgment entered in favor of plaintiff as prayed for in the complaint, with costs in all courts.
 

 Chief Judge Conway and Judges Desmond, Dye, Fuld, Froessel and Burke concur.
 

 Judgment reversed, with costs in all courts, and matter remitted to Trial Term for further proceedings in accordance with the opinion herein.