Felice K. Shea, J.
In this motion for summary judgment in lieu of complaint pursuant to CPLR 3213, plaintiff is the transferee of an official check in the amount of $559, signed by an officer of defendant bank, dated February 10, 1976 and made payable to plaintiff’s agent, The Patchworks. The check was indorsed by the payee to the plaintiff, deposited into plaintiff’s account on February 12, 1976 and thereafter was returned to plaintiff by its bank marked "Payment Stopped”. The check was in partial payment for goods received from plaintiff by Lawrence Reinhard III, purchaser of the check.
On the same day that the check issued, Reinhard advised the bank that the check had been lost and requested defendant to stop payment. Subsequently, Reinhard executed a standard bank affidavit and indemnity agreement in which he swore that the check had been "accidentally lost” and that he had not "sold, given, transferred, assigned, [or] delivered” it. The affidavit and indemnity agreement is annexed to defendant’s answering papers in support of its contention that it incurred no liability in relying on its customer’s stop payment order, and that a triable issue of fact exists as to whether or not the check was lost. Defendant argues that additional issues of fact are present with regard to plaintiff’s interest in the check, and as to whether plaintiff took the check with knowledge of alleged but unspecified infirmities. Defendant argues further that Reinhard, as purchaser, and The Patchworks, as payee, are necessary parties to this action. Defendant advises the court that a separate action is pending between Reinhard and plaintiff in which Reinhard claims defects in the goods received and seeks the return of money allegedly paid to plaintiff. Finally, defendant urges that the check herein is not "an instrument for the payment of money” within the terms of CPLR 3213.
The check which is the subject of this action is an official or cashier’s check. It has the name of defendant bank printed on it, the date of issuance, the amount, the payee’s name, the words "Official Check”, an illegible signature, and under the *920 signature, the printed words "Authorized Signature”. The name of the purchaser, Reinhard, does not appear on the check, nor are there any blank spaces.
A cashier’s check has been described as "an instrument drawn by a commercial bank on itself, representing an unconditional promise to pay the face value to the payee named thereon” (Personal Money Orders and Teller’s Checks: Mavericks Under the UCC, 67 Col L Rev 524, 525, note 5). A cashier’s check establishes a debtor-creditor relationship between the issuing bank and the payee. (Myers v First Nat. Bank of Scotia, 42 AD2d 657, 658.) Unlike an ordinary check drawn on a specific deposit balance, a cashier’s check is an obligation of the bank which issues it and a promise to draw the amount of the check from its own resources. The bank becomes both drawer and drawee of a cashier’s check and its issuance constitutes an acceptance. (Matter of Bank of United States, 243 App Div 287, 291; Arnold Mfg. Co. v Troy Assoc., 33 Misc 2d 439, 440; Kaufman v Chase Manhattan Bank Nat. Assn., 370 F Supp 276; 5A NY Jur, Banks and Trust Companies, § 359; Stopping Payment of Checks, 79 Banking L J 185, 195.)
The New York Uniform Commercial Code does not cover explicitly the liability of a drawer bank that stops payment of an official or cashier’s check. Subdivision (1) of section 4-303 of the Uniform Commercial Code provides that a bank is not required to stop payment on a certified check and has been interpreted to mean that there is no right to stop payment after certification. (Official Comment 5, McKinney’s Cons Laws of NY, Book 62 V2, Uniform Commercial Code, § 4-403, p 611.) Section 3-411 of the Uniform Commercial Code provides that certification of a check is acceptance. Although the Uniform Commercial Code does not indicate when a cashier’s check is deemed accepted, section 3-802 of the Uniform Commercial Code provides for the discharge of the underlying obligation whenever a bank is "drawer, maker or acceptor” of the instrument given in payment. Since under section 3-802 of the Uniform Commercial Code the payee loses its right against the purchaser when it accepts the bank instrument in payment of the underlying debt, the bank cannot be free to refuse payment.* Since acceptance is a bank’s own engagement to pay (5A NY Jur, Banks and Trust Companies, § 418), it follows *921 that a cashier’s check is accepted in advance by the act of issuance and that the issuing bank remains liable, after a stop payment order, even where there is a failure of consideration in the underlying transaction for which the check was given. Subdivision (1) of section 3-401 of the Uniform Commercial Code, which provides that no person is liable on an instrument unless his signature appears thereon, is consistent with this result.
The policy considerations which underlie the Uniform Commercial Code support the rule that a bank must remain liable on its official check even after a stop payment order by its customer. To hold otherwise could be a serious impediment to public reliance on our banking system. "[T]he Uniform Commercial Code * * * was enacted to protect persons engaged in business transactions involving instruments for the payment of money”. (Malphrus v Home Sav. Bank, 44 Misc 2d 705, 707.)
The courts in New York and in other jurisdictions have followed the general rule that payment cannot be stopped on a cashier’s check. (5A NY Jur, Banks and Trust Companies, § 420; Bobrick v Second Nat. Bank, 175 App Div 550, 553, affd 224 NY 637; Pennsylvania v Curtiss Nat. Bank, 427 F2d 395; Ann 56 ALR 532; Ann 107 ALR 1463, 1464-1465; Stopping Payment of Checks, 79 Banking LJ 185, 195, note 45.)
Malphrus v Home Sav. Bank (44 Misc 2d 705, supra) commented on in the Buffalo Law Review (Vol. 15, p 193) was a case factually similar to the case at bar where the purchaser of an automobile stopped payment on a teller’s check. The court, in holding the bank liable to the plaintiff payee, stated (p 706): "By issuing a teller’s check, the defendant savings bank gave to its depositor an instrument upon which the plaintiff relied in making the sale and delivery of an automobile. The plaintiff did not rely on [the purchaser’s] credit but in good faith accepted the check of a savings bank * * * The plaintiff accepted a bank check as in the nature of cash * * * a procedure that is widely followed in business transactions of many varieties * * * A teller’s check has generally been treated as 'cash’ * * * Here * * * there is no basis upon which to make a determination that the plaintiff should have considered the teller’s check in any different light than he would have considered a certified check. This was a bank obligation which he received as consideration when he delivered his merchandise.”
*922 Again, in Meckler v Highland Falls Sav. & Loan Assn. (64 Misc 2d 407) a payee of a teller’s check was granted summary judgment against a bank that stopped payment at the request of its customer. The court pointed out (pp 408-409): "[The purchaser] was not a party to that check and there is, therefore, no recourse against him * * * Since the check was drawn by a bank, plaintiffs mere acceptance of that check operated as a pro tanto discharge of plaintiffs claim against [the purchaser] * * * To permit defendant bank to avoid liability * * * on account of the stop order * * * would result in an obvious inequity * * * plaintiff could look to no one for payment of his services.”
The Court of Appeals reached the same result in International Firearms Co. v Kingston Trust Co. (6 NY2d 406) where a bank was held liable to the payee’s successor after it had stopped payment on a teller’s check, or bank draft, at the request of its customer. (See, also, Manhattan Imported Cars v Dime Sav. Bank of N. Y., 70 Misc 2d 889.)
A teller’s check is a check drawn by one bank (usually a savings bank) on another. Unlike a cashier’s check, which is accepted at issuance, a teller’s check is accepted by the drawee bank when the instrument is presented by the payee. However, a teller’s check is similar to a cashier’s check in that it is signed by a bank official and is a primary obligation of the issuing bank. The reasoning of the Malphrus, International Firearms Co. and Meckler cases should apply a fortiori to a cashier’s check.
Garden Check Cashing Serv. v First Nat. City Bank (18 NY2d 941) relied upon by defendant, is inapposite. In that case, the Appellate Division, First Department, in an opinion affirmed by the Court of Appeals, considered the effect of a stop payment order on a personal money order. The court concluded that the purchaser of a personal money order, like the maker of a personal check, retains the right to stop payment until acceptance upon presentment, and concommitantly, that the bank has no liability until acceptance. However, a cashier’s check differs from a personal money order in material ways, and most significantly in that a cashier’s check bears the signature of the bank, and not that of the purchaser. As the court said in Garden Check Cashing, "Any attempt to analogize the [personal money order] herein with a cashier’s or traveler’s check fails.” (Garden Check Cashing Serv. v First Nat. City Bank, 25 AD2d 137, 140.)
*923 We turn now to the arguments of defendant bank in opposition to the motion herein. It is clear that defendant is in error in claiming that defendant’s official check is not an "instrument for the payment of money” and that this dispute is not susceptible to a motion for summary judgment in lieu of complaint. (4 Weinstein-Korn-Miller, NY Civ Prac, par 3213.02a; Seaman-Andwell Corp. v Wright Mach. Corp., 31 AD2d 136; L & O Homes v Brown, 67 Misc 2d 594.)
Defendant’s contention that issues of fact exist with regard to plaintiffs interest in the check is similarly without merit. The affidavits of the payee’s treasurer and plaintiffs president establish that the payee was plaintiffs agent and that the indorsement on the check was authorized and without restriction. A check drawn in favor of a particular payee may be payable either to the actual payee or, upon his indorsement, to his indorsee.
Furthermore, neither the payee, The Patchworks, nor the purchaser, Reinhard, is a necessary party. The payee, as plaintiffs agent, could have no claim against defendant after its indorsement of the check to plaintiff, and defendant has asserted no claim against the payee. Reinhard may be liable to defendant on the indemnity agreement which he signed, or he may have a cause of action against plaintiff, but his defenses, if any, to the underlying transaction are not material to this dispute.
In the light of the detailed affidavits submitted for plaintiff by the treasurer of The Patchworks, who received the check, and the president of plaintiff Moon Over the Mountain, Ltd., who was present when the check was delivered by Reinhard, it cannot be said that an issue of fact exists as to whether or not the check was delivered. Defendant submits a hearsay affidavit by a bank officer who alleges that he talked to Reinhard on the telephone and was advised that the check was lost. The only additional evidence submitted by defendant is a copy of the form indemnity agreement executed by Reinhard on February 13, 1976 in confirmation of his oral stop payment order. Defendant offers no explanation for its failure to ascertain how the alleged loss occurred.
A bank issues its own checks in furtherance of its business and wishes the public to accept its checks without question. Sound business practice would suggest that the bank’s dishonor of its own check be justified by more than a standard form indemnity agreement with a checkmark next to a *924 printed statement that the check was lost. In any case, if loss by the customer is to be relied upon to defeat a motion for summary judgment, the bank must determine and present to the court the claimed evidentiary facts surrounding the alleged loss. This is particularly true where, as here, the named payee actually had possession of the check, and thus, presumptively received that possession by delivery. (Uniform Commercial Code, § 3-307; Official Comment 4, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 3-306, p 201.) In this case, the need for documentation is underscored by the customer’s independent suit against plaintiff on the underlying transaction. Reinhard, the customer who is alleged to have lost the check, is suing for the return of payment given to plaintiff on the ground of claimed defects in the goods delivered. To prevent summary judgment, it is incumbent upon defendant to submit a factual affidavit from Reinhard, or at the least, to offer an explanation for its failure to do so.
The court concludes that plaintiff has established that defendant’s check was delivered. Thus, there is no need to consider what effect the loss or nondelivery of the check may have had on the rights of the parties. The court also finds that the issuance and delivery of its cashier’s check preclude the bank from raising any defenses Reinhard may have against the payee or against plaintiff.
Accordingly, plaintiff’s motion for summary judgment is granted.

 This reasoning would not apply to a case where the bank is a party to the underlying transaction. (See TPO v Federal Deposit Ins. Corp., 487 F2d 131.)