**UNIVERSITY SAVINGS ASSOCIATION and Petrolife, Inc., Appellants,**

v.

**INTERCONTINENTAL CONSOLIDATED COMPANIES, INC., Appellee.**

No. 01–87–00750–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 19, 1988.

Rehearing Denied June 16, 1988.

James H. Leeland, W. David East, Walsh, Squires & Tompkins, Mark K. Glasser, John E. Nelson, III, Porter & Clements, Houston, for appellants.

Dalton L. Jones, Gregg, Jones, Mieszkuc & Pollard, Don B. Morgan, Wettinger, Steelhammer, Tucker, Fred C. Allen, Fulbright & Jaworski, W. James Kronzer, Law Offices of W. James Kronzer, Houston, for appellee.

Before JACK SMITH, COHEN and HOYT, JJ.

OPINION

JACK SMITH, Justice.

The primary issue in this case is whether a savings association has a legal right to stop payment on a "teller's check," and what the legal consequences are when payment of the "teller's check" is stopped.

It is undisputed that Petrolife, Inc. and the appellee, Intercontinental Consolidated Companies, Inc., entered into a contract for the purchase of gasoline, but the date of delivery was contested. On November 7, 1986, Petrolife, which maintained a revolving credit account with University Savings Association ("University"), requested University to issue a check in the amount of $2,008,125, payable to Intercontinental Consolidated ("Intercontinental"). University issued the check by drawing upon one of its accounts at the Federal Home Loan Bank of Little Rock, Arkansas. On November 12, 1986, University, pursuant to a request by Petrolife, requested Federal Home Loan Bank to stop payment on the check. The Federal Home Loan Bank stopped payment. No gasoline was ever delivered under the contract.

On April 2, 1987, Intercontinental filed suit for recovery of the amount of the check and for damages. It also requested and obtained a temporary restraining order that restrained University from issuing any drafts or checks on its accounts at the Federal Home Loan Bank in any amount that would deplete its accounts below the sum of $2,008,125. The court also set a date for the hearing on Intercontinental's request for a temporary injunction. Prior to the hearing on the temporary injunction, Petrolife filed a plea in intervention, setting forth certain defenses to Intercontinental's cause of action, offering to defend University in the cause of action, and cross-filing against Intercontinental for damages.

At the temporary injunction hearing on April 13, 1987, the judge granted Intercontinental's request for a temporary injunction, and ordered University to desist from enforcing the stop payment order on the check. On May 11, Intercontinental filed its motion for a partial summary judgment in which it alleged that as a matter of law it was entitled to judgment against University. It also alleged that on two dates after the court had entered its injunction against University, the Federal Home Loan Bank had refused to honor the check. It further asserted that there were no material fact issues and that it was entitled to judgment. In this connection, we note that Intercontinental's motion for a partial summary judgment asserts that the trial court had denied Petrolife's petition in intervention on April 13, 1987, but the record before this Court indicates that the trial court denied Petrolife's petition on May 20, 1987.

On May 20, 1987, Intercontinental's motion for partial summary judgment was granted on all issues, except attorney's fees. On that same date, a jury trial was held on the issue of attorney's fees. On June 2, 1987, the court entered its final judgment.

In their first point of error, the appellants contend that the trial court erred in granting the appellee's motion for partial summary judgment. Specifically, the appellants contend that the trial court misapplied the law and that there remained substantial fact issues to be resolved.

A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In a summary judgment proceeding, the burden of proof is on the movant, and all doubts about the existence of a genuine issue of fact are resolved against him or her. *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex.1982) (per curiam). When the movant has established a right to a summary judgment, the burden shifts to the non-movant. The non-movant must then respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

We review the record of a summary judgment in accordance with the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

(2) In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Issues not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment cannot be considered on appeal as grounds for reversal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 676.

The question of a savings association's right to issue a stop payment order on "teller's checks" is apparently one of first impression for this state. The Texas Business and Commerce Code and Texas case law contain no reference to a "teller's check." However, "teller's checks" have been described as "checks drawn by savings banks and savings and loan associations on commercial banks with which they maintain checking accounts." *See* Note, *Personal Money Orders and Teller's Checks: Mavericks under the U.C.C.*, 67 Colum.L.Rev. 524, 540 (1967). Thus, it appears that the term "teller's check" in the savings and loan industry is comparable to the term "bank draft" in the banking industry, where a check is drawn by a bank on an account it maintains in another bank or financial institution. *See Fulton Nat'l Bank v. Delco Corp.*, 128 Ga.App. 16, 195 S.E.2d 455 (1973).

The appellee's position before the trial court and in this Court is that a "teller's check" is comparable to a "cashier's check" and that a bank may not stop payment on a "cashier's check."

We recognize that the Texas Supreme Court has held that under the Tex.Bus. & Com.Code Ann. § 4.303 (Tex. UCC) (Vernon Supp.1988), a bank may not stop payment on a "cashier's check." *Wertz v. Richardson Heights Bank & Trust*, 495 S.W.2d 572, 574 (Tex.1973). In *Wertz*, the court reasoned that because the bank was both the drawer and the drawee, the check when issued also acted as an acceptance. Therefore, it concluded that it was too late to stop payment.

The appellee's analogy between a "teller's check" and a "cashier's check" is misplaced because in a "teller's check" the savings association is the drawer of the check, but not the drawee. Thus, the check, when issued by the savings association on an account with another bank, has not been accepted. This distinction, however, does not resolve the question of whether University had the legal right to request the Federal Home Loan Bank to stop payment on the "teller's check" that it, University, had issued at the request of Petrolife. To unravel the issues in this case, it is necessary to determine the relationship between the Federal Home Loan Bank and University.

A Federal Home Loan Bank has limited authority to engage in banking business. 12 U.S.C. § 1431 (1982). Tex.Bus. & Com. Code Ann. § 1.201(4) (Tex. UCC) (Vernon 1968) defines the term "bank" as "any person engaged in the business of banking." We therefore conclude that the Federal Bank was a "bank" under the Tex.Bus. & Com.Code.

The Texas Business Code defines a "customer" as "any person having an account with a bank or for whom a bank has agreed to collect items and *includes a bank carrying an account with another bank.*" Tex. Bus. & Com.Code Ann. § 4.104(a)(5) (Tex. UCC) (Vernon 1968) (emphasis added). Under these definitions, University was a customer of the Federal Home Loan Bank. Because the Federal Bank had not accepted the check, certified or paid it in cash, §§ 4.303(a)(1) & (2) do not apply as a bar to a stop payment order. The applicable code section provides that:

[a] Customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and such manner as to

afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in § 4.303.

Tex.Bus. & Com.Code Ann. § 4.403(a) (Tex. UCC) (Vernon 1968).

Payment can be stopped even against a holder in due course. However, the drawer remains liable on the instrument and is barred from most defenses against a holder in due course. *See* Tex.Bus. & Com. Code Ann. § 3.305 (Tex. UCC) (Vernon 1968); and Tex.Bus. & Com.Code Ann. § 4.403, comment 8 (Tex. UCC) (Vernon 1968). It is necessary for the drawer to remain liable because the obligor in the underlying obligation is released from liability once the payee accepts a note from a drawer bank. Tex.Bus. & Com.Code Ann. § 3.802 (Tex. UCC) (Vernon 1968).

A holder in due course takes the instrument free from all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt except for infancy, incapacity, fraud in the factum, discharge through insolvency, and any other discharge of which the holder has notice. Tex.Bus. & Com.Code Ann. § 3.305 (Tex. UCC) (Vernon 1968). Unless a person is a holder in due course, he or she takes the instrument subject to all valid claims and defenses. This includes any third person claim, when "the third person himself defends the action for such party." Tex.Bus. & Com.Code Ann. § 3.306(4) (Tex. UCC) (Vernon 1968).

Comment 5 to § 3.306, in reference to (4), states:

> The contract of obligor is to pay the holder of the instrument, and the claims of other persons against the holder are generally not his concern. He is not required to set up such a claim as a defense, since he usually will have no satisfactory evidence of his own on the issue; and the provision that he may not do so is intended as much for his protection as for that of the holder. The claimant who has lost possession of an instrument so payable or indorsed that another may become a holder has lost his rights on the instrument, which by its terms no longer runs to him. The provision includes all claims for rescission of a negotiation, whether based in incapacity, fraud, duress, mistake, illegality, breach of trust or duty or any other reason. It includes claims based on conditional delivery or delivery for a special purpose. It includes claims of legal title, lien, constructive trust or other equity against the instrument or its proceeds. The exception made in the case of theft is based on the policy which refuses to aid a proved thief to recover, and refuses to aid him indirectly by permitting his transferee to recover unless the transferee is a holder in due course. The exception concerning restrictive indorsements is intended to achieve consistency with Section 3–603 and related sections. Nothing in this section is intended to prevent the claimant from intervening in the holder's action against the obligor or defending the action for the latter, and asserting his claim in the course of such intervention or defense. Nothing here stated is intended to prevent any interpleader, deposit in court or other available procedure under which the defendant may bring the claimant into court or be discharged without himself litigating the claim as a defense. Compare Section 3–803 on vouching in other parties alleged to be liable. *Id.*, comment 5.

Case law from other states on the issue of the right to stop payment on "teller's checks" is conflicting. In *International Firearms Co. v. Kingston Trust Co.*, 6 N.Y.2d 406, 160 N.E.2d 656, 189 N.Y.S.2d 911 (1959), the New York court held that a bank may not stop payment on a "bank draft." However, this case was decided prior to passage of the UCC. In *Malphrus v. Home Sav. Bank of Albany*, 44 Misc.2d 705, 254 N.Y.S.2d 980 (N.Y.Cty.Ct.1965), the court held that a bank, when not a party to the underlying transaction, could not stop payment on a "teller's check." In *Meckler v. Highland Falls Sav. & Loan Ass'n*, 64 Misc.2d 407, 314 N.Y.S.2d 681 (N.Y.Sup.Ct.1970), the court held that, because of § 3.802, where the acceptance of

an instrument with the bank as maker extinguishes the underlying debt, a bank's issuance of a stop payment order does not relieve it of liability on its check. There was no indication about whether the third party was willing to intervene.

In a more recent case from New York, the civil court for the City of New York held that a bank that issues an "official" or "cashier's check" and subsequently stops payment, remains liable and may not raise defenses of the purchaser of the check. *Moon Over the Mountain, Ltd. v. Marine Midland Bank,* 87 Misc.2d 918, 386 N.Y.S. 2d 974 (N.Y.Civ.Ct.1976). However, this case dealt with a "cashier's check."

In *Fur Funtastic, Ltd. v. Kearns,* 120 Misc.2d 794, 467 N.Y.S.2d 499 (N.Y.Sup.Ct. 1983), the court held that the drawer of a bank check is qualified to issue a stop order, but is not permitted to raise its customer's contract defenses. However, there is no indication of whether, as provided in § 3.306(4), the customer was willing to intervene, or whether the claims were barred because the holder was a holder in due course.

In *Bank of N.Y. v. Welz,* 118 Misc.2d 645, 460 N.Y.S.2d 867 (N.Y.Sup.Ct.1983), the court held that:

> the code permits stop payment of a teller's check but the stop payment does not automatically preclude recovery on the instrument. Defenses may be raised by the indorser where an instrument is indorsed to a third party. Where the payee is a party to the transaction, defenses may be raised to recover on the instrument against the drawer. But where the payee is the holder in due course a stop payment does not permit defenses to be raised because such a payee has exchanged the underlying obligation for the instrument and must be protected.

The court criticized the earlier cases (*Malphus* and *Fur Funtastic*) in their approach because the bank would always be liable on its maker's contract under § 3.413. However, the court found plaintiff to be a holder in due course and that no defenses were available against a holder in due course.

Finally, in a New York case, the court in *Cling Corp. v. Ridgewood Sav. Bank,* 519 N.Y.S.2d 834 (N.Y.App.Div.1987), held that a bank has a right to stop payment on a "teller's check," reasoning that the bank always remained liable as drawer for the value unless legal and valid defenses were available. In that case the customer had joined the action and was attempting to defend the bank. The trial court had granted summary judgment. The appeals court overturned the summary judgment, holding that plaintiff was not a holder in due course, leaving a question of fact about the viability of a defense.

The present case is very similar to *Fulton Nat'l Bank v. Delco Corp.,* 128 Ga. App. 16, 195 S.E.2d 455, where the court held that a bank could stop payment on a "teller's check." The court held that a bank had the right to stop payment on its check; however, it remained liable as drawer for the value unless a legal and valid defense was available. The customer had joined the action and was attempting to defend the bank. The trial court had granted summary judgment. The appeals court reversed, holding that plaintiff was not a holder in due course and that therefore, there was a question of fact about the viability of a defense.

In the instant case, University pleaded that Intercontinental was not a holder in due course of the "teller's check" and set out the reasons why, i.e., lack of consideration, fraud, and Intercontinental's knowledge of a claim against and a defense to the instrument. It also set forth all the facts that Petrolife enumerated in its petition to intervene.

In University's controverting affidavit to Intercontinental's motion for summary judgment, facts were set forth to raise the issues of lack of consideration and fraud in the underlying transaction for which the "teller's check" was issued.

█ We conclude that a fact issue was raised on whether Intercontinental was a holder in due course of the teller's check.

█ We reject the appellee's contentions that: (1) Federal Home Loan Bank is a

clearing house and not a bank; (2) University is not a customer of Federal Home Loan Bank; (3) a "teller's check" is the same as a "cashier's check" and should be treated accordingly; and (4) the Texas Business and Commerce Code prohibits a savings and loan association from stopping payment on a "teller's check" held by an entity not a "holder in due course." We hold that University was not prohibited by law from stopping payment on the teller's check, and because a fact issue was raised on whether Intercontinental was a holder in due course, the trial court improperly granted Intercontinental's motion for summary judgment.

The appellants' first point of error is sustained.

In their second and third points of error, the appellants contend that it was error for the trial court to deny Petrolife's plea in intervention. They contend that Petrolife was a proper and necessary party to the suit and had a justiciable interest in the check.

Tex.R.Civ.P. 60 provides that:

Any party may intervene, subject to being stricken out by the court for sufficient cause on the motion of the opposite party; and such intervenor shall, in accordance with Rule 72, notify the opposite party or his attorney of the filing of such pleadings within five days from the filing of same.

■ Tex.Bus. & Com.Code Ann. § 3.306(4) (Tex. UCC) (Vernon 1968) authorizes a third party to defend the action and allege its claims in the lawsuit. Under the intervention rule, a party has the right to intervene if the intervenor's interest is such that if the original action had never been commenced, and he had first brought it as a sole plaintiff, he would have been entitled to recover to the extent of at least a part of the relief sought; or, if the action had been brought against him, he would be able to defeat recovery, at least in part. His interest may be either legal or equitable. *King v. Olds*, 71 Tex. 729, 731–32, 12 S.W. 65, 65–66 (1888); *Inter–Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.).

Broad discretion is placed in the trial court in determining whether an intervention should be stricken. Its exercise is subject to review for abuse of discretion. *Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). If the intervenor meets the test stated above, and intervention will not greatly complicate the case by the excessive multiplication of issues, to effectively protect the intervenor's interest, intervention may be allowed. Under such circumstances, it may constitute an abuse of discretion to strike the intervention. *Id.; Inter–Continental Corp. v. Moody*, 411 S.W.2d at 578.

■ Petrolife is not a party to the "teller's check," but the check was issued for Petrolife's benefit and at its request. As provided by the Texas Business & Commerce Code, Petrolife was willing to step in and defend University. If the facts are as Petrolife claims, and we assume so under a summary judgment motion, then Petrolife is entitled to intervene and participate in the trial.

To hold otherwise could create a multiplicity of lengthy lawsuits. Initially, if an intervention is not allowed, University would necessarily need the testimony of Petrolife's witnesses to prove its defense that Intercontinental was not a "holder in due course." University would also need these witnesses to show its defenses of no consideration for the "teller's check" and fraud in the underlying transaction. Furthermore, Petrolife would have to file a separate cause of action against Intercontinental to set aside the underlying contract. Finally, in the event that Intercontinental prevails in the present cause of action against University, University might have to file against Petrolife to recoup its loss.

We can think of no valid reason why a multiplicity of lawsuits are needed in the present case. Indeed, a multiplicity of lawsuits would be burdensome to the parties and their witnesses as well as to the judicial system. The evidence can be presented, and all the issues resolved in a single trial.

We hold that the trial court abused its discretion in striking Petrolife's plea in intervention.

The appellants' second and third points of error are sustained.

The summary judgment of the trial court is reversed with instructions to the trial court to allow Petrolife's plea in intervention.

HOYT, J., not participating in the opinion.