Joseph L. **WAXMAN**, Trustee in Bankruptcy of the Hawaiian Polynesian Cultural Exchange Corporation, Plaintiff,

v.

James K. **KEALOHA**, John J. O'Connor and Daniel Christopher Kwock, Defendants.

Civ. No. 2902.

United States District Court
D. Hawaii.

Feb. 26, 1969.

---

4. 11 Cong.Rec. 12297.

5. Ibid. 12383.

Alexander C. Marrack, of Robertson, Castle & Anthony, Honolulu, Hawaii, for plaintiff.

Tom C. Leuteneker, Hilo, Hawaii, of the firm of Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for the defendant, James K. Kealoha.

## ORDER and MEMORANDUM

WILLIAM D. MURRAY, District Judge.

Plaintiff in this action is alleged to be the duly appointed trustee in bankruptcy of the Hawaiian Polynesian Cultural Exchange Corporation. He was appointed pursuant to the order of the Court in Bankruptcy, No. 7370, Superior Court of Montreal, Quebec, Canada. Defendants, citizens of Hawaii, are the incorporators and stockholders of the corporation which was incorporated under the laws of the State of Hawaii. It is alleged that de-

fendants each subscribed to 8,000 shares of common stock of the corporation at $10.00 per share and that each still owes $71,500 on the subscriptions. The trustee is suing in behalf of the corporation to recover this amount from each defendant.

Defendant Kealoha moves to dismiss the action on the grounds that the court lacks jurisdiction over the parties and subject matter. He bases his motion on the following theories:

(1) 11 U.S.C.A. § 46(b), Sec. 23(b) of the Federal Bankruptcy Act states that

"Suits by the receiver and the trustee shall be brought * * * only in the courts where the bankrupt might have brought * * * them if proceedings under this title had not been instituted, unless by consent of the defendant, * * *."

Defendant argues that, inasmuch as all defendants are Hawaii residents, and inasmuch as the bankrupt was a Hawaii Corporation, there is no diversity of citizenship and jurisdiction does not properly lie with the court (citing Sec. 23(b)).

(2) That plaintiff, as a foreign-appointed receiver in bankruptcy, has no extra-territorial rights to the property of defendant which this court can recognize, and that absent appointment by the forum the receiver has no capacity to sue for debts owing the corporation.

(3) That the Federal Bankruptcy Act establishes uniform rules and procedures for actions in bankruptcy, and that this court should not take jurisdiction over cases not in harmony with that Act.

(4) That granting plaintiff the right to sue in this court would unduly prejudice the rights of local creditors and citizens in favor of a foreign receiver.

 Section 23 of the Federal Bankruptcy Act is not a general jurisdictional statute enlarging or limiting federal jurisdiction. Newland v. Edgar, 362 F. 2d 911 (9th Cir. 1966), (construing Sec. 23(a) of the Act). It is part and parcel of the Federal Act and refers to receivers and trustees who acquire their status under that Act. It does not purport to cover all receivers and trustees who acquire such representative status from some other source. In the instant case, the plaintiff's representative status was acquired under Canadian law. As a result, Sec. 23(b) (the statutory limitation) is inapplicable.

 Plaintiff argues that this court has diversity jurisdiction under 28 U.S. C.A. § 1332. The rule has long been that representatives such as executors, administrators, guardians, trustees or receivers stand upon their own citizenship in federal courts, irrespective of the persons they represent. Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961).

"Executors and trustees suing for other's benefit form no exception to this rule. If they are personally qualified by their citizenship to bring suit in the federal courts, the jurisdiction is not defeated by the fact that the parties whom they represent may be disqualified. This has been repeatedly adjudged. It was so adjudged as early as 1808 in Chappedelaine v. Deschenaux, 4 Cranch 306, 307, 8 U.S. 306, 2 L.Ed. 629 * * *" Susquehanna and Wyoming Valley, Railroad and Coal Co. v. Blatchford, 78 U.S. (11 Wall.) 172, 175, 20 L.Ed. 179 (1870).

Thus, unless recognition of the appointment would violate domestic law, or otherwise contravene public policy of the forum, jurisdiction would properly lie in this case.

 Although one would assume that the bankruptcy courts of one country would assist those of another, such has never formally been the case. As one author has noted:

"In view of the developments in other parts of the world, the fact that the U. S. and Canada, immediate neighbours with a similar bankruptcy law, still are without any agreement on questions of bankruptcy administrations involving both countries, must appear strange. (Nadelmann, International Bankruptcy Law; Its Present

Status, 5 Univ. of Toronto Law Journal 324, at 351 (1943)).

While it is true that the "power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount", International Shoe Co. v. Pinkus, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929), that does not prohibit the courts of this country from extending comity to judicial decisions of foreign nations where it would be just to do so. As was stated in Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198, 202 (1918):

> "The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

The mere fact of the foreign appointment of a receiver in bankruptcy does not, standing alone, come into conflict with domestic bankruptcy policies. Since application of our bankruptcy law is limited to "proceedings under this title", 11 U.S.C. § 11(a), it is clear that this court can look into controversies arising under bankruptcy laws of foreign nations without defeating principles of uniformity enunciated in our law (so long as jurisdiction is otherwise proper). Thus, in absence of international treaties on the subject, one must look to principles of comity to discover whether foreign receivers may entertain suits in local courts to recover debts for the bankrupt estate.

There is no doubt that under the traditional rule, articulated in Booth v. Clark, 58 U.S. (17 How.) 321, 334, 15 L.Ed. 164 (1854) (a pre-Bankruptcy Act case dealing with inter-state jurisdictional questions), a foreign receiver cannot as of right maintain an action in a state other than that in which he was appointed, to recover assets. Since that 1854 case, numerous decisions based upon law and policy, have undermined the rule therein enunciated. Thus, in Oakes v. Lake, 290 U.S. 59 (1933) at pp. 61–62, 54 S.Ct. 13, at p. 14, 78 L.Ed. 168 the court said:

> "The general rule undoubtedly is that an ordinary chancery receiver, having no other authority than that arising from his appointment as such, cannot as of right maintain an action in a state other than that in which he was appointed * * * The very terms in which the rule is expressed, however, clearly recognize that where the receiver has 'other authority than that arising from his appointment as such,' he may under some circumstances maintain an action outside the state of his appointment. And so it definitely has been held.

> The foreign receiver may maintain such a suit, so far at least as the federal courts are concerned, where title to the property in question has been vested in him by conveyance or statute. In Bernheimer v. Converse, 206 U.S. 516, 27 S.Ct. 755, 51 L.Ed. 1163 it was held that a receiver might sue in a foreign jurisdiction to collect upon the statutory liability of stockholders of a corporation, where the statute of this state conferred the right upon the receiver as quasi-assignee".

The case of Luikhart v. Spurck, 1 F.Supp. 53, 59 (S.D.Ill.1932) held that:

> "If the receiver is not a mere chancery receiver, but is a statutory receiver, appointed under a law which specifically authorizes his suing in foreign jurisdictions, or impliedly does so by conferring title to the property sought to be recovered upon the receiver, then he may, as a matter of right, sue in a foreign jurisdiction."[1]

---

1. It appears the trustee is provided with the necessary powers by Canadian law to bring suit in foreign jurisdictions. The Canadian Bankruptcy Act, R.S.C. 1952, c. 14, states in Section 8(6), "for the purpose of taking possession of an realizing upon the property of the bankrupt a trustee has power to act as such anywhere," and in subsection (8), "the trustee may prior to the first meeting

The only Hawaiian case on the subject, Byrne v. Allen, 10 Haw. 325, (1896) stated that:

> "In general, a receiver appointed in one jurisdiction is not entitled as of right to recognition in another jurisdiction, but he may be recognized by comity, and whether he should or should not be recognized in any particular case depends upon the circumstances of that case."

Commentators on the conflict of laws have uniformly felt that the Booth rule has no place in modern jurisdiction. See 5 Univ. of Toronto Law Journal 324, 59 Harvard Law Review 1025, Ehrenzweig on Conflict of Laws, West Publishing Co. 1962. Thus, Professor Ehrenzweig states in his work, at p. 57, that:

> "The incapacity rule has outlived its usefulness and should be abandoned. It would not have found the wide adoption it has received, had it not at one time responded to the concern for local interests. But this concern has long ceased to be meaningful, since the Supreme Court has forbidden discrimination against out-of-state creditors.
>
> In view of this development, the growing number of exceptions, and the expense, delay and inconvenience caused by the alleged rule, as well as in view of the total absence of modern case authority supporting it, the time may have come for its re-examination, notwithstanding its 'good logical support.'"

Some courts have taken the position that comity will be afforded the foreign judgment if the courts of the foreign nation would have extended it to our courts in a similar situation. In re Aktiebolaget Kreuger & Toll, 20 F.Supp. 964 (S.D.N.Y.1937). This is relevant when one sees the Canadian case of Williams v. Rice, 3 D.L.R. 225 (1926), where the trustee of the bankrupt in the United States was allowed to recover personal property of the bankrupt fraudulently transferred to a resident of Manitoba.

Other courts have chosen to view .the issue in terms of international fair play and justice. Thus, the court in Harrison v. Triplex Gold Mines, 33 F.2d 667, 672 (1st Cir. 1929), stated:

> "When citizens of this country engage in an enterprise in a foreign country with respect to property there situated, they subject themselves to the laws, decisions and decrees of its courts respecting such property and property rights."

Thus, if an opportunity existed for a full and fair hearing (consistent without concepts of due process), no new hearing will be given in this country, unless abuse can be shown to have existed.

 United States courts, both state and federal, have taken the position that comity will be extended in situations such as the one at bar, unless to do so would prejudice local creditors and citizens. Byrne v. Allen, 19 Haw. 325, Canfield v. Scripps, 15 Cal.App.2d 642, 59 P.2d 1040 (1936), 16 Am.Jur.2d, Conflict of Laws, Sec. 6, p. 15, (1964). Defendant has failed to show that any local creditors would be prejudiced by extending comity to the Canada decree. In fact, neither party has alleged the existence of any local creditors. Defendants have not shown why any defenses for non-payment of the stock subscriptions could not be adequately advanced here as they would be in some other court.

Therefore, it is ordered and this does order that the defendant's motion to dismiss is denied. In addition, plaintiff is ordered to notify any potential local creditors as to the nature of these pro-

---

of creditors obtain such legal advice and take such court proceeding as he may consider necessary for the recovery or protection of the property of the bankrupt." Also, the Act states in Section 10(1), "the trustee may, with the per-mission of the inspectors, do all or any of the following things: * * * (d) bring, institute, or defend any action or other legal proceeding relating to the property of the bankrupt * * *"

ceedings and such local creditors, if there be any, may enter the action for the purpose of showing any adverse affect on their interests caused by the court's taking jurisdiction in this action.