The CLARKSON CO., LTD., as Trustee in Bankruptcy, appointed by the Supreme Court of the Province of Newfoundland, of the property of Newfoundland Refining Co., Ltd., and Provincial Refining Co., Ltd., Appellees,

v.

John M. SHAHEEN et al., Appellants.[1]

No. 22, Docket 76–5018.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1976.

Decided Nov. 1, 1976.

---

1. This suit was erroneously captioned in the court below and in the papers on appeal here as if it were a bankruptcy matter, viz., In re Provincial Refining Co., Ltd., and Newfoundland Refining Co., Ltd., Bankrupts. While these two alien corporations have been adjudicated bankrupts in the Supreme Court of Newfoundland (Trial Division), their Newfoundland trustee in bankruptcy has brought suit here alleging diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Thus the proper caption is as herein set forth.

Richard deY. Manning, New York City (Manning, Carey & Redmond, Arthur C. Schupbach, New York City, of counsel), for appellants.

Jeffrey A. Barist, New York City (White & Case, Edna R. Sussman, New York City, of counsel), for appellees.

Before SMITH, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This suit was brought by a Canadian trustee in bankruptcy to obtain records located in the New York offices of the trustee's two Canadian bankrupt corporations and in the possession of their officials, who are the appellants here. The United States District Court for the Southern District of New York, Richard Owen, *Judge*, granted to the trustee a preliminary injunction that required appellants to turn over the records and restrained them from disbursing or secreting any corporate property in, or coming into, their hands. This appeal lies by right from the grant of that injunction. 28 U.S.C. § 1292(a)(1).

Provincial Refining Co., Ltd. (PRC), and Newfoundland Refining Co., Ltd. (NRC), are interrelated corporations, commonly owned, organized under the laws of the Province of Newfoundland, Canada; they have executive offices and do business in New York. PRC owns and operates a petroleum refinery at Come-by-Chance, Newfoundland, and NRC manages the operation of the refinery. On March 12, 1976, after a week-long adversary hearing at which PRC and NRC were represented by counsel, the Supreme Court of Newfoundland (Trial Division) adjudicated the two corporations bankrupt and appointed appellee, The Clarkson Co., Ltd. (Clarkson), as trustee of both. Canadian law requires a trustee to take possession of the records of a bankrupt corporation,[2] and Clarkson brought the present suit for that purpose. Named as

---

**2.** Canadian Bankruptcy Act § 12(2). For the purpose of obtaining possession of a bank-  rupt's property, a Canadian trustee has "power to act as such anywhere." *Id.* § 12(6); *cf.* 11

defendants were appellants here, who, as officers of the bankrupts, had custody or control of the records in New York.

■ A temporary restraining order preserving the records and directing the appellants to give Clarkson immediate and continuing access to them was issued by Judge Owen in federal district court on March 23, 1976, the day the federal complaint was filed. On March 24, appellants' attorney obtained an ex parte order in the New York Supreme Court in order to prevent Clarkson from further examining PRC and NRC records.[3] Immediately thereafter, Clarkson representatives were denied access to the books and records. On March 25, the state court order was modified at Clarkson's request so as not to restrain Clarkson from taking action pursuant to the federal court order. Appellants' request for the state order followed by their denial of access to Clarkson on March 24 led to the grant of a preliminary injunction by Judge Owen below on April 1, 1976, after notice and hearing. On that date the district court held

both that the trustee had a lawful right to all property of the bankrupts and that "there is enormous risk of irreparable injury to the trustee" because the records "may well be destroyed." No security against the possibility of wrongful restraint under Fed. R.Civ.P. 65(c) was sought by appellants or ordered by the court. Notice of appeal was duly filed.[4]

## I. *Jurisdiction.*

■ Initially, as we are bound to do, Fed.R.Civ.P. 12(h)(3); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884), we raise on our own motion the question of jurisdiction, which is alleged on the ground of diversity of citizenship under 28 U.S.C. § 1332. As a matter of American bankruptcy law, the citizenship of the bankrupt, rather than that of the trustee in bankruptcy, is determinative for purposes of diversity jurisdiction. Bankruptcy Act, § 23, 11 U.S.C. § 46; *Bush v. Elliott,* 202 U.S. 477, 26 S.Ct. 668, 50 L.Ed. 1114 (1906); *Tilton v. Model Taxi*

U.S.C. § 25(a)(5) (bankrupt must transfer foreign property to trustee).

**3.** The state action is entitled *SNR Holdings, Inc. v. Ataka America, Inc.,* Index No. 03959/76 (Sup.Ct.N.Y.County). SNR Holdings, Inc., alleges that it is the sole stockholder of both NRC and PRC, and the suit, filed before the March 12, 1976, date of the Newfoundland bankruptcy adjudication, is a derivative one against Ataka & Co., Ltd., a Japanese corporation, two of its subsidiaries, Ataka America, Inc., a New York corporation, and Atlantic Trading (Delaware), Inc. ("Atlantic Trading"), and Sumitomo Bank, Ltd., a Japanese bank. Subsequently named as codefendants were, *inter alia,* Clarkson and Morgan Stanley & Co., Inc. Atlantic Trading was the assignee from Ataka America of bills of exchange of NRC and PRC, issued in connection with the Ataka group's financing of NRC purchases of crude oil, which was in turn sold at cost to PRC for refining purposes. This financing was done, the papers make it appear, pursuant to an agency agreement dated September 20, 1973, whereby Ataka America, Inc., was to act as agent of NRC in connection with its purchase of crude oil supplies and to furnish certain financing in connection therewith. The suit alleges that the defendants engaged in a conspiracy to violate the agency agreement and thereby take over the assets of PRC and NRC,

with the bankruptcy proceedings a step in the conspiracy.

Other litigation that this bankruptcy has produced includes *Newfoundland Refining Co. Ltd. v. Ataka America, Inc.,* No. 76 Civ. 941 (S.D.N.Y.), a complaint in federal court similar to the SNR suit, which was voluntarily dismissed, appellants say, after an ex parte injunction was obtained by Atlantic Trading in Canada; *Provincial Refining Co. v. Kleinwort Benson Ltd.,* Index No. 03740/76 (Sup.Ct.N.Y.County), which involves the nonjudicial appointment of Clarkson as receiver by the holder of the first mortgage on the refinery; and *Provincial Refining Co. Ltd. v. The Province of Newfoundland,* Index No. 03960/76 (Sup.Ct.N.Y.County), which has to do with the appointment of Clarkson as a receiver under the second mortgage on the refinery. The amount of litigation could be explained in part, perhaps, by the hundreds of millions of dollars alleged to be involved; at the very least over $6 million of PRC bills of exchange were found to be due and owing in the Canadian bankruptcy adjudication.

**4.** Appellants filed a notice of appeal both from the March 23 temporary restraining order and from the April 1 grant of a preliminary injunction. The former, of course, is not appealable. *See Morning Telegraph v. Powers,* 450 F.2d 97, 99 (2d Cir. 1971), *cert. denied,* 405 U.S. 954, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972).

*Corp.,* 112 F.2d 86, 88 (2d Cir. 1940); 2 *Collier on Bankruptcy* ¶ 23.13, at 596 (14th ed. 1975). If this rule governed here, a question would arise as to whether PRC and NRC are to be treated as citizens of New York or Newfoundland.[5] It is also true, however, that the determination of diversity citizenship under the Federal Bankruptcy Act is in derogation of the general common law rule that courts will look to the citizenship of a trustee, receiver, administrator, or other representative, and not the party which he represents, in determining diversity jurisdiction. *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186, 52 S.Ct. 84, 76 L.Ed. 233 (1931); *New Orleans v. Gaines's Administrator,* 138 U.S. 595, 606, 11 S.Ct. 428, 34 L.Ed. 1102 (1891); *Nunn v. Feltinton,* 294 F.2d 450, 453 (5th Cir. 1961), *cert. denied,* 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962); *Nolan v. Transocean Air Lines,* 276 F.2d 280, 283 n. 3 (2d Cir. 1960) (Friendly, J.), *vacated on other grounds,* 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961); *Waxman v. Kealoha,* 296 F.Supp. 1190, 1192 (D.Hawaii 1969); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3606, at 634–35 (1975).[6] Thus, a trustee appointed under a law other than the Federal Bankruptcy Act may use his own citizenship in claiming diversity jurisdiction unless that law imposes its own restrictions. Since Clarkson was duly appointed a trustee in bankruptcy under the laws of Canada and appellants are citizens of New York, we hold that diversity jurisdiction exists in this case. *Accord, Waxman v. Kealoha, supra.*

█ A related point, which in a sense goes to jurisdiction, involves this court's equitable responsibility, under Fed.R.Civ.P. 19, to dismiss a suit when the absence of an indispensable party makes impossible a just resolution of the entire action. *See Kamhi v. Cohen,* 512 F.2d 1051, 1053–55 (2d Cir. 1975); 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1611 (1972). Appellants urge that this action cannot be justly adjudicated without the presence as parties of PRC and NRC, and that, since their joinder would destroy diversity jurisdiction, the action must be dismissed. *See id.* § 1610. Under the flexible test governing Rule 19 questions, enunciated in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118–19, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (Harlan, J.), we find that the presence of PRC and NRC is irrelevant to a just resolution of the case. While it is true that the records sought are those of the bankrupt corporations, it is also true that the trustee in bankruptcy seeks them in connection with the administration of the bankrupt estates, and that the two corpora-

---

5. As alien corporations organized under the laws of another country, PRC and NRC are probably deemed to be citizens exclusively of Canada for diversity purposes. *See Union Marine & General Insurance Co. v. American Export Lines, Inc.,* 274 F.Supp. 123, 125 n. 1 (S.D.N.Y.1966); *Tsakonites v. Trans Pacific Carriers Corp.,* 246 F.Supp. 634, 641 (S.D.N.Y. 1965), *aff'd,* 368 F.2d 426 (2d Cir. 1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967); *Chemical Transportation Corp. v. Metropolitan Petroleum Corp.,* 246 F.Supp. 563, 565–67 (S.D.N.Y.1964). *But see Bergen Shipping Co. v. Japan Marine Services, Ltd.,* 386 F.Supp. 430, 433 (S.D.N.Y.1974); *Jerro v. Home Lines, Inc.,* 377 F.Supp. 670 (S.D.N.Y. 1974) *(semble).* The leading case on the subject is *Eisenberg v. Commercial Union Assurance Co.,* 189 F.Supp. 500 (S.D.N.Y.1960), which is discussed with approval in 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3628, at 824–26 (1975). That treatise termed the holding that alien corporations are, for diversity purposes, citizens only of the foreign state of incorporation "reasonable as a matter of statutory construction." *Id.* at 827. While the opposite argument has been adopted as a proposal by the American Law Institute in its *Study of the Division of Jurisdiction Between State and Federal Courts* § 1301(b)(1) (1969), which has received support from learned authority, H. Friendly, *Federal Jurisdiction: A General View* 151 n. 49 (1973), the proposal is in the form of a suggested statutory amendment, indicating that the argument is better addressed to Congress than to the courts. *See also* Moore & Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited,* 77 Harv.L.Rev. 1426, 1436 (1964).

6. Of course, if an out-of-state representative is appointed solely for the purpose of creating diversity, the collusive jurisdiction statute, 28 U.S.C. § 1359, prohibits the district court from assuming jurisdiction. *See O'Brien v. AVCO Corp.,* 425 F.2d 1030 (2d Cir. 1969).

tions have already been adjudicated bankrupt. There is here no possibility of prejudice through multiple suits; no one's rights are being or will be injured. The bankruptcy trustee, as appellants seem consistently to forget, is a fiduciary accountable to a court of law. If on appeal the adjudication of bankruptcy is overturned, the trustee would, of course, be duty-bound to return the records to their rightful owners, who would then be the on-going corporations, not the appellants herein. But in the interim, since it is the duty of the trustee to marshal the assets of the bankrupt companies and to examine the corporate records toward that end, and since it is the appellants who must be sued to obtain those records, we hold that PRC and NRC are not essential parties here.

## II. *Abstention.*

■ Appellants next urge that the federal courts should stay their proceedings in this case [7] until various of appellants' claims are determined in the pending state court proceedings (the SNR suit) described in note 3 *supra.* While the law in this circuit is clear that a district court may stay federal proceedings to allow resolution of a similar cause of action pending in state court, *see, e. g., Klein v. Walston & Co.,* 432 F.2d 936, 937 (2d Cir. 1970) (per curiam); *Mottolese v. Kaufman,* 176 F.2d 301, 302–03 (2d Cir. 1949) (L. Hand, J.), it is equally clear that a district court has wide discretion, and in some cases a duty, not to abstain merely because a state suit is pending in which some of the same issues may be decided, *see, e. g., Burch v. Carmody,* 377 F.Supp. 1157, 1158–59 (E.D.N.Y.1974); *Loeb v. Whittaker Corp.,* 333 F.Supp. 484, 489–90 (S.D.N.Y.1971).

■ We do not think that this discretion was in any sense abused here. The causes of action and relief requested are different in the state and federal suits, and the questions of New York law involved are not unsettled ones, as to which deference by the

federal courts to the state courts would be more appropriate. *See County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–90, 196–97, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). We see no way in which this federal proceeding, relating solely to the records of the two bankrupt companies, could be thought to be an interference with the state court proceeding, in which damages are being sought for an alleged conspiracy and in which an injunction was unsuccessfully sought against the bankruptcy proceedings. Nor is there a particular res already being administered by a state court, so as to implicate the specialized doctrine of *Princess Lida v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). Related claims have been made in state court, but corporate records are in issue only in federal court. *See generally* Currie, *The Federal Courts and the American Law Institute (II),* 36 U.Chi.L.Rev. 268, 335 (1969).

## III. *Comity.*

■ Having decided that the district court properly exercised its discretion not to abstain, we reach the central issue in this case: whether the Canadian bankruptcy proceeding may be collaterally attacked in this court. The doctrine of comity, *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895), applies in the state of New York, *see, e. g., Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 279, 317 N.Y.S.2d 315, 322, 265 N.E.2d 739, 744 (1970); *International Firearms Co. v. Kingston Trust Co.,* 6 N.Y.2d 406, 411, 189 N.Y.S.2d 911, 913–14, 160 N.E.2d 656, 658 (1959). Under it, New York courts recognize the statutory title of an alien trustee in bankruptcy, as long as the foreign court had jurisdiction over the bankrupt and the foreign proceeding has not resulted in injustice to New York citizens, prejudice to creditors' New York statutory remedies, or violation of the laws or public policy of the state. *Cole v. Cunningham,* 133 U.S. 107, 122–23, 10 S.Ct. 269, 33 L.Ed. 538 (1890). These exceptions are con-

---

7. Such a stay would not mean declining jurisdiction, but only delaying its exercise. *Ungar v. Mandell,* 471 F.2d 1163, 1166 (2d Cir. 1972).

strued especially narrowly when the alien jurisdiction is, like Canada, a sister common law jurisdiction with procedures akin to our own. Canadian trustees in bankruptcy with appropriate authority have been held entitled to recognition, *Waxman v. Kealoha, supra*; *cf. Oakes v. Lake*, 290 U.S. 59, 61–63, 54 S.Ct. 13, 78 L.Ed. 168 (1933) (receiver with statutory or court authority should be recognized in foreign jurisdictions), and Canadian judgments have been held entitled to credit, *International Firearms Co. v. Kingston Trust Co., supra*. New York courts have given foreign trustees injunctive or related relief to obtain possession of property, *see, e. g., Fincham v. Income from Certain Trust Funds of Cobham*, 193 Misc. 363, 81 N.Y.S.2d 356 (1948); *Union Guardian Trust Co. v. Broadway National Bank & Trust Co.*, 138 Misc. 16, 245 N.Y.S. 2 (1930), and Canadian courts have also given this form of relief to a trustee appointed in the United States, *Williams v. Rice*, [1926] 3 D.L.R. 225.

Appellants do not argue that the Newfoundland court lacked jurisdiction over the bankrupts or that there is any conflict between the alien trustee and domestic creditors. They assert, however, that comity should not be given the Newfoundland court's designation of appellee as trustee both because it was "tainted with fraud" and therefore was not cognizable as a foreign judgment in New York,[8] and because the public policies of New York in favor of forum selection clauses and against assignments for the purpose of litigation have been violated. We find no merit in either of these contentions.

As to fraud, the affidavit that appellant's counsel filed in opposition to the request for temporary relief contains only conclusory statements concerning a "demonstrably fraudulent affidavit" of a Japanese officer of Atlantic Trading, a company involved in the state suit, *see* note 3 *supra*, which was said to have been incorporated specifically "to defraud the creditors of its parent company, Ataka & Co., Ltd." Evidently, however, this is not the "fraud" that appellants rely on here. Rather, their sole submission is that the allegations of fraud in the SNR suit, which they claim were brought to the attention of the court below and which were not specifically denied by Clarkson, "were sufficient to cause the withholding of comity to Clarkson until the charge had been reviewed by the State Court." Even assuming that the allegations of fraud made in the state court action were sufficiently brought to the attention of Judge Owen,[9] allegations of fraud in the state suit are not sufficient of themselves to show that the bankruptcy declaration and appointment of Clarkson as trustee were "tainted with fraud." No independent substantiation of these charges, which must be pleaded "with particularity" under Fed.R. Civ.P. 9(b), was offered.

■ We have, moreover, examined the transcript of the bankruptcy hearings before Chief Justice Mifflin of the Newfoundland Supreme Court. The only claim of fraud there made relates to the affidavit of the Japanese officer in connection with the appointment of Clarkson as an interim receiver, a claim which the Chief Justice re-

---

**8.** *Cf.* N.Y.Civ.Prac.Law § 5015(a)(3) (McKinney Cum.Supp. 1975–1976) ("The court which rendered a judgment or order may relieve a party from it . . . upon the ground of . . . fraud . . . ."); *id.* § 5304(b)(3) ("A foreign country [money] judgment need not be recognized if . . . the judgment was obtained by fraud. . . .").

**9.** The affidavit of counsel for appellants in opposition to the request for a temporary restraining order refers to Clarkson's shutting down the refinery, "in furtherance of the conspiracy" as receiver and interim trustee, "on the basis of a 'trumped up' default which never occurred . . . ." In recounting the NRC–

PRC situation, it goes on to make the allegation that sometime in late 1975 a plan—described by the Code name "Project Winnet"—emerged by virtue of which the agency agreement was to be breached, PRC and NRC raided of cash, Ataka's claims assigned to Atlantic Trading, and "the fraudulent filing of a bankruptcy petition against NRC and PRC in Newfoundland" accomplished. Clarkson is said to be "a puppet at the end of a string" held by Morgan Stanley & Co. (a codefendant in the SNR litigation) and to have used as counsel Davis, Polk & Wardwell, who "are known throughout New York" as counsel to Morgan Stanley.

jected as irrelevant to the bankruptcy proceedings in Newfoundland. The fact that Clarkson is a codefendant in the SNR suit is neither reason to deny it power to act on behalf of the estates nor itself evidence of fraud. A foreign judgment may not be collaterally attacked "upon the mere assertion of the party that the judgment was erroneous in law or in fact," *Hilton v. Guyot, supra,* 159 U.S. at 203, 16 S.Ct. at 158, much less upon a mere assertion of fraud. Clear and convincing evidence of fraud is required in order successfully to attack a foreign judgment, just as such proof is necessary before a court will set aside its own judgment, *Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.,* 301 F.2d 114, 115 (2d Cir. 1962); 11 C. Wright & A. Miller, *supra,* § 2860, at 189. While appellants are free to introduce additional proof at a trial on the merits of this action, they have not shown enough at this stage to cast doubt on the Canadian judgment.

There is no greater force to appellants' next suggestion, that New York public policy has been violated because the Canadian court did not give sufficient weight to New York Judiciary Law § 489 (the champerty statute) [10] and to a forum selection clause in the "agency agreement" between the bankrupts and Ataka America, Inc. (a sister corporation of Atlantic Trading (Delaware), Inc., which was the petitioning creditor in the Newfoundland proceeding as a result of being assignee of certain bills of exchange issued pursuant to the agency agreement), *see* note 3 *supra.* Both of these arguments were duly presented to the bankruptcy court, with conflicting expert testimony as to the relevant New York law. The Newfoundland court accepted the petitioning creditors' expert testimony that the choice of forum clause in the "agency agreement" would be read narrowly in New York so as to apply to the agreement itself but not to the negotiable instruments drawn thereunder. The champerty question was not raised as explicitly, but questions asked by appellants' Canadian counsel on cross-examination of a vice president of Atlantic Trading, who was also a director and employee of Ataka Co., Ltd. of Japan, did explore the topic.[11] Appellants had further opportunities to argue this point but failed to take advantage of them.[12] In sum, there is no indication that

**10.** N.Y.Jud.Law § 489 (McKinney 1968) provides:

> No . . . corporation . . . directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a . . . bill of exchange . . . with the intent and for the purpose of bringing an action or proceeding thereon.
>
> . . .
>
> Any corporation . . . violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any . . . corporation . . . violating this section who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor.

**11.** The official in question, Mr. Hattori, was asked the purpose of the agreement transferring assets and liabilities from Ataka America to Atlantic Trading. To the question whether the purpose was to give Atlantic the necessary status to come to Newfoundland and commence the bankruptcy proceeding, Mr. Hattori's answer was in the negative. The statute itself speaks only in terms of assignments made "with the intent and for the purpose of bringing an action or proceeding thereon," N.Y.

Jud.Law § 489 (McKinney 1968), note 10 *supra,* and, while appellants argue that this was the purpose of the assignment, their evidence has not been substantial. We have held only recently that an assignment to a party with a significant interest in related litigation does not by itself violate § 489. *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery,* 534 F.2d 1012, 1015–16 (2d Cir. 1976). *See generally Fairchild Hiller Corp. v. McDonnell Douglas Corp.,* 28 N.Y.2d 325, 321 N.Y.S.2d 857, 270 N.E.2d 691 (1971).

**12.** Appellants' counsel did examine his own expert and cross-examined the petitioning creditors' expert extensively as to the forum selection clause and the effect of the Uniform Commercial Code, including the question whether an assignee as a related company could be a holder in due course of the bills of exchange which were assigned by Ataka America to Atlantic. No mention was made in the course of these examinations of N.Y.Jud.Law § 489. One of the lay witnesses produced in the bankruptcy proceeding on behalf of NRC and PRC mentioned this section, but of course he was unqualified to testify as an expert on New York law, and the court ruled accordingly.

the Newfoundland court gave appellants less than a full opportunity to present these questions, or less than full consideration to those aspects of New York law and public policy which were presented. We think that it would contravene the public policy of New York and the doctrine of comity not to recognize the Canadian judgment in these circumstances, and we therefore recognize it for present purposes.

### IV. *Preliminary Injunction.*

■■■■ Having decided to credit the judgment of the Newfoundland bankruptcy court, we have no trouble in holding that the district court's issuance of a preliminary injunction was proper. The Canadian Bankruptcy Act clearly transfers to the duly appointed bankruptcy trustee all legal rights in the bankrupt's property, Canadian Bankruptcy Act § 50(5), "whether situated in Canada or elsewhere," *id.* § 2. It also gives the trustee "power to act as such anywhere," *id.* § 12(6), and requires the trustee to take possession immediately of the deeds, books, record, documents, and all property of the bankrupt for the purpose of making an inventory and generally organizing the estate, *id.* § 12(2). Clarkson thus is most likely to prevail on the merits.

Further, on the strength of a factual context, described *supra*, in which the appellants used a state court's order to circumvent the prior issuance of a federal order, Judge Owen held, we believe with support in the evidence, that there was an effort to block access to the records by the trustee. On this basis he found that there was "an enormous risk of irreparable injury to the trustee here were they not turned over." In so finding, Judge Owen expressed on the record his recollection of the ex parte statement of appellants' counsel to the effect that he "declined to honor" Judge Owen's temporary restraining order, that he had thrown the order out, and that he demanded that the order be vacated forthwith because the judge has no power or authority to enter it. While appellants dispute this factual recounting, there is no dispute that they did attempt to use a New

York state court restraining order to block compliance with Judge Owen's prior order. We hold that an attempt of this kind to deny a trustee in bankruptcy access to the records of a bankrupt corporation by parties with interests potentially adverse to those of the trustee creates a prima facie showing of possible irreparable injury. Since, as we have indicated, there is also a probability of the trustee's success upon the merits, the traditional standard for the granting of a preliminary injunction has been met. *See Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

■■■ Because no request for a bond was ever made in the district court, and because, under Fed.R.Civ.P. 65, the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), the district court may dispense with the filing of a bond. *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972); *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782–83 (10th Cir. 1964). There is little likelihood of harm to the parties enjoined here, as Clarkson is a licensed and bonded trustee in bankruptcy answerable to the Canadian court and the subjects of the injunction are books and records, not assets. The fact that Clarkson has moved the records to its offices in Canada is a matter for its own convenience and judgment; on the representation of counsel, Clarkson has engaged to return the books to New York if any court so requires. Appellants made no request to the court below that the books and records be kept in New York, and the court suggested no such restriction.

■■■ No point on appeal is made of the lack of a formal injunction order in this case. We note that a court's failure to comply with the specific requirements of Fed.R.Civ.P. 65(d) as to the form of an injunction does not render the order void. 11 C. Wright & A. Miller, *supra*, § 2955, at

538; *cf. Bethlehem Mines Corp. v. United Mine Workers,* 476 F.2d 860, 862 (3d Cir. 1973) (failure to comply with formal requisites for preliminary injunction does not deprive court of jurisdiction or of power to hold violators in contempt). We would point out, however, that Rule 65(d), read together with Rule 52(a), requires that adequate findings of fact and conclusions of law be set forth, and specifically requires that the operative passages of the order granting an injunction or restraining order be set out in detail, thus enabling the order to be obeyed easily and enforced effectively. *See Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) (per curiam); 11 C. Wright & A. Miller, *supra,* § 2955. While no difficulty has arisen in this case, we strenuously caution that strict adherence to the Rules is better practice and may avoid serious problems in another case.

Order granting preliminary injunction affirmed.