**Bernard CORNFELD, Plaintiff,**

v.

**INVESTORS OVERSEAS SERVICES, LTD., Defendant.**

**78 Civ. 4806 (HFW).**

United States District Court, S. D. New York.

May 22, 1979.

Kalman & Kaufman, P. C., New York City, for plaintiff; Edwin Kaufman, New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for the court-appointed co-liquidators of defendant I.O.S., Ltd.; Herbert M. Wachtell, Michael W. Schwartz, Theodore N. Mirvis, New York City, of counsel.

Securities and Exchange Commission, Washington, D. C., amicus curiae; Jacob H. Stillman, Associate General Counsel, James E. Bowers, Special Counsel, Washington, D. C., Marvin E. Jacob, Associate Regional Administrator, New York City.

## OPINION

WERKER, District Judge.

This indemnity action was commenced by the plaintiff Bernard Cornfeld against the defendant I.O.S., Ltd. ("IOS"), sued herein as Investors Overseas Services, Ltd., for the recovery of litigation expenses purportedly incurred by Cornfeld in his capacity as a former officer and director of IOS and an IOS-related entity. IOS, represented by its court-appointed co-liquidators and their attorneys, presently moves to dismiss or stay this action on the basis of international comity.[1] The Securities and Exchange Commission (the "SEC") has filed, by leave of court, an *amicus curiae* memorandum of law in support of IOS's motion.

## BACKGROUND

IOS is a Canadian corporation which is and has been since 1973 the subject of a liquidation proceeding being held in New Brunswick, Canada pursuant to the Canadian Winding-Up Act, Can.Rev.Stat. ch. W-10 (1970) (the "Act"). On November 5, 1973, after an adversarial hearing on the merits at which evidence was presented, Judge Dickson of the Supreme Court of New Brunswick issued an opinion in which he concluded that liquidation of IOS would be "just and equitable" and that "the most compelling case" had been made out for the issuance of a winding-up order. *In re I.O.S. Ltd.*, slip op. at 17–23 (Sup.Ct. New Brunswick Nov. 5, 1973). Judge Dickson entered an order the same day directing "that [IOS] be wound-up under the provisions of the Winding-Up Act." The appointing of a provisional liquidator for the winding-up of IOS was subsequently affirmed by the Appeal Division of the Supreme Court of New Brunswick, and leave to appeal Judge Dickson's winding-up order was denied.[2]

The Act sets forth a comprehensive scheme for the winding-up of insolvent companies. It provides for the appointment of one or more liquidators to take control of and account for all assets, debts and liabilities of an insolvent company, to collect outstanding accounts due and owing to the company, to assess and compromise claims against the company, and to assist in the fair distribution of the assets of the company to its creditors. Act §§ 23, 33–40, 93–95.

---

1. In filing this motion, IOS is making a special and limited appearance only. At a conference held before the Court on November 3, 1978, counsel for both sides agreed that the instant motion would be litigated prior to any other proceedings in the case. IOS has reserved its right to move against the complaint on jurisdictional grounds. *See* Affid. of Herbert M. Wachtell, sworn to Jan. 3, 1979, at ¶ 3.

2. Copies of Judge Dickson's opinion, his winding-up order, and the decisions of the Appeal Division of the New Brunswick Supreme Court are annexed to the Wachtell affidavit as exhibits A, B, and C, respectively.

The effect of the November 5, 1973 winding-up order was to prohibit IOS from carrying on any further business except to the extent that it was required to do business to wind-up its affairs. Act § 19.

Prior to the issuance of the winding-up order, IOS was engaged principally in the sale and management of mutual funds and related financial activities. At the height of its operations, IOS and its related companies constituted "one of the largest financial services complexes in the world, with a network of dozens of subsidiaries incorporated variously throughout most of the countries of Europe and Central and North America." *In re I.O.S. Ltd.*, slip op. at 9.

The plaintiff Cornfeld is the founder of IOS and was an officer and director of the company until early 1971, when control of IOS passed into the hands of Robert L. Vesco. Cornfeld continues to own over 200,000 shares of IOS common stock. Affid. of Bernard Cornfeld, sworn to Mar. 10, 1979, at ¶¶ 2, 3, 7.

Cornfeld seeks by the instant action, which was originally filed in New York Supreme Court and removed to this court by IOS on the basis of diversity jurisdiction, to attach certain alleged assets of IOS located within the State of New York. The complaint demands a money judgment against IOS in the amount of $1,543,698.70.

The activities of IOS and IOS-related companies during both the Cornfeld and Vesco periods have engendered a slew of litigations.[3] One such lawsuit, *Securities*

*and Exchange Commission v. Vesco, et al.*, 358 F.Supp. 1186 (CES), was filed in November 1972 by the SEC against 42 individual and corporate defendants, including Vesco and IOS. The SEC's complaint in that action originally requested the appointment of a receiver, but this request was withdrawn "in favor of an arrangement whereby the financial affairs of IOS-related companies would be wound up in the jurisdictions where they were incorporated." SEC Memorandum, at 2. This arrangement was reached as a result of a cooperative international effort to wind-up the IOS-related companies in an equitable and practical manner.[4]

On this motion to dismiss or stay the instant action IOS urges the Court to recognize and defer to the IOS liquidation proceeding in Canada as a matter of international comity. In supporting the motion, the SEC contends that deferring to the Canadian proceeding would assure "the orderly and equitable liquidation of IOS," while failing to do so would result in giving Cornfeld an undeserved preference over other IOS creditors.

In opposing the motion, Cornfeld argues essentially that recognition of the Canadian liquidation proceeding would prejudice his rights as a citizen of New York and that New York is the appropriate forum in which to resolve the merits of this action.

## DISCUSSION

■ The starting point for any discussion of the doctrine of international comity is

---

3.  *See, e. g., Arthur Lipper Corp. v. SEC*, 547 F.2d 171 (2d Cir. 1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978); *King v. United States*, 545 F.2d 700 (10th Cir. 1976); *In re Colorado Corp.*, 531 F.2d 463 (10th Cir. 1976); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied sub nom.* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); *IIT v. Cornfeld*, 462 F.Supp. 209 (S.D.N.Y.1978); *Venture Fund v. Willkie Farr & Gallagher*, 418 F.Supp. 550 (S.D.N.Y.1976).

    In *Arthur Lipper Corp. v. SEC*, Judge Friendly remarked, "This petition . . . is the latest chapter in the extensive litigation resulting from the financial debacle of IOS . . .."

547 F.2d at 173. *See also IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1003 (2d Cir. 1975) ("[This] action is another product of the troubled existence of [IOS].").

4.  Representatives from the SEC, the governments of Canada, Luxembourg, and the Netherland Antilles, and the provinces of Ontario and Quebec have formed the Intergovernmental Committee of Regulatory Authorities and Liquidators for the purpose of assisting in the winding-up of IOS-related companies throughout the world. Representatives of the French, Swiss and Bahamian governments have also been invited to join the committee, since IOS entities exist in those countries. SEC Memorandum, at 2–3, 10–13. *See In re Colorado Corp.*, 531 F.2d at 466 n.1; *Bersch v. Drexel Firestone, Inc.*, 519 F.2d at 978 n.4.

*Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), wherein the Supreme Court defined comity as

the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

159 U.S. at 164, 16 S.Ct. at 143. Comity is to be accorded a decision of a foreign court as long as that court is a court of competent jurisdiction and as long as the laws and public policy of the forum state and the rights of its residents are not violated. *Hilton v. Guyot*, 159 U.S. at 202–03, 16 S.Ct. 139; *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir. 1976); *SNR Holdings, Inc. v. Ataka America, Inc.*, 54 A.D.2d 406, 408, 388 N.Y.S.2d 909, 911 (1st Dep't 1976) (*per curiam*). New York has narrowly construed the exceptions to the comity doctrine: "[F]oreign-based rights should be enforced unless the judicial enforcement of such a [right] would be the approval of a transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Intercontinental Hotels Corp. v. Golden*, 15 N.Y.2d 9, 13, 254 N.Y. S.2d 527, 529, 203 N.E.2d 210, 212 (1964); *accord, Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111, 120 N.E. 198, 202 (1918); *SNR Holdings, Inc. v. Ataka America, Inc.*, 54 App.Div.2d at 408, 388 N.Y.S.2d at 911.[5]

In this action, the relevant considerations bear heavily in favor of recognizing the Canadian liquidation proceeding.

■ The fact that the foreign country involved is Canada is significant. It is "well-settled" in New York that the judg-ments of the Canadian courts are to be given effect under principles of comity. *International Firearms Co. v. Kingston Trust Co.*, 6 N.Y.2d 406, 411, 189 N.Y.S.2d 911, 913, 160 N.E.2d 656, 658 (1959). Trustees in bankruptcy appointed by Canadian courts have been recognized in actions commenced in the United States. *Clarkson Co. v. Shaheen, supra; Waxman v. Kealoha*, 296 F.Supp. 1190 (D.Haw.1969). More importantly, Canada is "a sister common law jurisdiction with procedures akin to our own," *Clarkson Co. v. Shaheen*, 544 F.2d at 630, and thus there need be no concern over the adequacy of the procedural safeguards of Canadian proceedings.

No issue has been raised as to the Canadian court's jurisdiction over IOS. It is undisputed that IOS is in fact a Canadian corporation. IOS has had its nominal head office in the City of Saint John in the Province of New Brunswick since 1969. IOS appeared and was represented by counsel at the hearing held by Judge Dickson which resulted in the issuance of the winding-up order. *See In re I.O.S. Ltd.*, slip op. at 1–2. Hence, it is clear that the Supreme Court of New Brunswick had and continues to have jurisdiction over IOS.

■ Recognizing the Canadian liquidation proceeding certainly would not violate the laws or public policy of New York or the United States. On the contrary, American public policy would be furthered, for the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction. Section 11a of the Bankruptcy Act, 11 U.S.C. § 29(a), and Bankruptcy Rule 401(a) together pro-

5. Another indication of the high regard the New York courts have had for principles of comity can be found in its rejection of the reciprocity requirement. In *Hilton v. Guyot*, the Supreme Court held that a judgment rendered in the plaintiff's favor in France was prima facie evidence of the validity of his claim. The French judgment was not conclusive, the Court held, because under French law judgments of American courts were reviewable on the merits. 159 U.S. at 227–28, 16 S.Ct. 139. The New York Court of Appeals, in *John-ston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926), a case also involving a French judgment, held that it was not bound by *Hilton v. Guyot* in this respect and extended comity to the French judgment without regard to reciprocity. *See generally* Restatement (Second) of Conflict of Laws § 98, Comment e (1971).

In this action, New York law is controlling on the issue of comity. *Clarkson Co. v. Shaheen*, 544 F.2d at 629–30; *Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 n.5 (S.D.N.Y.1972).

vide for an automatic stay of the continuation or commencement of any action against a bankrupt. A virtually identical provision is contained in the Canadian Winding-Up Act. Section 21 thereof states:

> After the winding-up order is made, no suit, action or other proceeding shall be proceeded with or commenced against the company [being liquidated], except with leave of the court and subject to such terms as the court imposes.

Section 21 of the Canadian statute and section 11a and Rule 401(a) of the American bankruptcy laws are intended to ensure that the assets of a bankrupt are efficiently and fairly distributed among its creditors in a single proceeding instead of erratically being dissipated in a number of different lawsuits. *Stewart v. LePage*, 29 D.L.R. 607, 613, 615–16 (Sup.Ct.Can.1916); *David v. Hooker, Ltd.*, 560 F.2d 412, 417 (9th Cir. 1977); *Mar-Tex Realization Corp. v. Wolfson*, 145 F.2d 360, 362 (2d Cir. 1944).

The revised Bankruptcy Act, which was passed on November 6, 1978 and becomes effective October 1, 1979, expressly implements "[p]rinciples of international comity and respect for the judgments and laws of other nations" into its provisions. *See* H.R. Rep.No.95–595, 95th Cong., 1st Sess. 325 (1977), U.S.Code *Cong. & Admin.News* 1978, pp. 5787, 6281. Section 304(b) of the revised Bankruptcy Act provides that a "court may enjoin the commencement or continuation of any action against a debtor with respect to property involved in [a foreign bankruptcy, liquidation or reorganization] proceeding [or any action against] such property." Pub.L.No.95–598, 92 Stat. 2560 (1978), *reprinted in* [1978] U.S.Code Cong. & Admin.News. Section 305(a) enables a court to dismiss an action against a debtor if "there is pending a foreign [bankruptcy, liquidation or reorganization] proceeding." 92 Stat. 2561. *See also* section 304(c)(5), 92 Stat. 2560–61 (in determining whether to stay an action, "the court shall be guided by what will best assure an economical and expeditious administration of [a bankrupt's] estate, consistent with . . comity.").

The conclusion that this action should be deferred to the Canadian proceeding is further supported by *Canada Southern Railway v. Gebhard*, 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883). In *Gebhard*, New York plaintiffs brought an action in New York to recover on the bonds of a Canadian railroad company which was undergoing reorganization in Canada because of financial difficulties. The reorganization scheme had been approved by a majority of the railroad's creditors and shareholders as well as the Canadian Parliament. The Supreme Court held that the New York action was barred and the New York bondholders bound by the Canadian reorganization. The Court noted that the reorganization plan

> is in entire harmony with the spirit of bankrupt laws, the binding force of which, upon those who are subject to the jurisdiction, is recognized by all civilized nations . . .. Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be *recognized in other countries*.

109 U.S. at 539, 3 S.Ct. at 371.

The case at bar is virtually indistinguishable from *Gebhard*. Cornfeld, a New York citizen,[6] commenced this action in New York on an alleged obligation of a Canadian corporation undergoing liquidation in Canada because of financial difficulties. The policies underlying the American and Canadian bankruptcy laws and the principles of international comity compel the conclusion that Cornfeld should pursue his claims in Canada. The fact that Corn-

---

**6.** IOS has not conceded that Cornfeld is in fact a resident of New York. Reply affid. of Herbert M. Wachtell, sworn to April 23, 1979, at

¶ 7 n. For purposes of this motion, it is assumed that Cornfeld is a New York resident.

feld may be a New York citizen is inconsequential, for Cornfeld voluntarily associated himself with and indeed controlled IOS for many years. It was Cornfeld who caused IOS to be incorporated under the laws of Canada. As the Supreme Court held in *Gebhard*:

[E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere.

109 U.S. at 537–38, 3 S.Ct. 370, *accord, Martyne v. American Union Fire Insurance Co.*, 216 N.Y. 183, 193, 110 N.E. 502, 505 (1915).

There is no reason to believe that Cornfeld's rights will not be adequately protected in Canada. The Canadian Winding-Up Act sets forth a procedure whereby creditors of a company being wound-up under the Act can submit and prove their claims against the company. *See* Act §§ 71–95. The procedure established by the Canadian Act is similar to that provided by section 57 of the American Bankruptcy Act, 11 U.S.C. § 93. Cornfeld has not challenged the fairness of the Canadian statute. Instead, he charges that Clarkson Co. Ltd., the agent of the court-appointed liquidators of IOS, will not fairly and adequately protect the interests of creditors and shareholders such as himself. This claim must be rejected, however, for the quality and propriety of Clarkson's services are matters best determined by the Supreme Court of New Brunswick in its continuing supervision of the liquidation proceeding. If Clarkson is indeed guilty of impropriety, it will undoubtedly be removed, since Cornfeld himself is spearheading a stockholder effort to have Clarkson's services terminated. Affid. of Bernard Cornfeld, sworn to Mar. 10, 1979, at ¶ 7.[7]

Cornfeld's claim that the instant motion should be denied because New York is the appropriate forum for resolving the merits of this action is unconvincing. While Cornfeld correctly points out that the indemnification contract in issue contains a clause providing for the application of New York law, such a clause is not conclusive. *Haag v. Barnes*, 9 N.Y.2d 554, 216 N.Y.S.2d

---

**7.** Cornfeld also contends that this motion should be denied because the "only creditors who have been successful in their claims against IOS have been those who have been able to attach property of IOS." Affid. of Bernard Cornfeld, sworn to Mar. 10, 1979, at ¶ 6. This contention misses the mark. The fact that courts in other countries may have declined to recognize the Canadian liquidation proceeding *is not in any way binding on this Court.* The considerations in favor of granting comity to the Canadian proceeding, from my point of view, remain the same. In any event, the attachments to which Cornfeld refers were apparently obtained prior to the commencement of the Canadian liquidation proceeding and pri-

or to the appointment of liquidators for IOS. Reply affid. of John H. Meek, sworn to Apr. 19, 1979, at ' 7. Section 86 of the Canadian Winding-Up Act provides that "[n]o lien or privilege shall be created . . . upon the real or personal property of the company [being wound-up] if, before payment over to the plaintiff of the moneys actually levied, paid or received under [an] attachment [or] garnishee order . . . ., *the winding-up of the business* of the company has commenced." Hence, there is a clear distinction between Cornfeld's attempted attachment herein and the attachments obtained prior to the commencement of the winding-up of IOS.

165, 175 N.E.2d 441 (1961); *Southern International Sales Co. v. Potter & Brumfield Division*, 410 F.Supp. 1339 (S.D.N.Y.1976). Without deciding the choice of law issue with respect to the merits of the action, the Court notes in passing that the indemnification agreement was executed in England and that at least half of the litigations for which reimbursement of expenses is sought occurred in Switzerland. Even assuming New York law is applicable to the merits, resolution of the action in Canada would not be precluded. As for the convenience of witnesses, any inconvenience to New York witnesses would be outweighed, in my opinion, by the factors in favor of having all of the claims against IOS resolved in a single proceeding in the country where IOS was incorporated.

Finally, it must be pointed out that American courts in at least three other IOS-related cases have granted comity to foreign liquidation or bankruptcy proceedings. *See In re Colorado Corp.*, 531 F.2d 463 (10th Cir. 1976) (comity accorded to decrees of Luxembourg and Netherlands Antilles courts declaring IOS-related companies to be in liquidation and bankruptcy and appointing liquidators and trustees); *IIT v. Cornfeld*, 462 F.Supp. 209 (S.D.N.Y.1978) (recognizing liquidators of IOS-related company appointed by Luxembourg court); *SEC v. Vesco*, 358 F.Supp. 1186 (S.D.N.Y. 1973) (in approving consent order, court recognized primary responsibility for liquidating IOS-related companies as resting in courts of each corporation's domicile). In *IIT v. Cornfeld*, Judge Goettel refused to look behind a Luxembourg judicial decree, commenting that:

> From a practical standpoint, recognition is a necessity if the liquidators are to continue in their difficult task of recouping the assets of the fund that may exist in countries all over the world, and their efforts to recover the assets of a worldwide community of investors is manifestly "consistent" with the general policy of the United States.

462 F.Supp. at 217. This observation applies with equal force to the situation at bar. In light of the public policy of the United States and New York as expressed in the case law and as embodied in the present and revised bankruptcy acts, the public interest in judicial efficiency and international cooperation, the right of all of the creditors and shareholders of IOS to the efficient and equitable distribution of its assets, and all of the circumstances of this case, I conclude that this action must be deferred to the Canadian liquidation proceeding.

## CONCLUSION

In accordance with the above, the defendant's motion is granted. The complaint is hereby dismissed on the condition that IOS and its co-liquidators waive any time limitation or other procedural defense they may have which would bar Cornfeld from filing the claims asserted herein in the New Brunswick proceeding. The defendant is directed to submit an order on notice within ten days after entry of this decision.

SO ORDERED.